UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MAISTER ASSOCIATES                                CIVIL ACTION

VERSUS                                            NUMBER: 06-0589

STATE FARM FIRE AND CASUALTY COMPANY              SECTION: "I"(5)


**ORDER AND REASONS**


Presently before the Court are cross-motions for summary judgment filed by State Farm Fire and Casualty Company and Maister Associates. (Rec. docs. 33, 65).

This litigation ensued when Maister Associates, hereinafter Maister, brought suit in connection with damage to real property which it owns located at 100 Chateau Court, Houma, Louisiana, known as the Maison Terrebonne Apartments. The complex consists of one hundred twenty units housed in seventeen different buildings. At all relevant times, Maister was insured by State Farm Fire and Casualty Company, hereinafter State Farm. The subject matter

jurisdiction of the Court is based upon diversity and the allegation that the controversy at issue exceeds $75,000. 28 U.S.C. §1332.

It is uncontroverted that State Farm originally issued a policy of insurance to plaintiff on December 19, 2001 which ran for a yearly time period. The policy was twice renewed, providing coverage through December 19, 2004. At issue herein is an interpretation of the language of State Farm's policy.

In its initial complaint, plaintiff contends that it was insured against "accidental direct physical loss" to its apartment complex as a result of "specified causes", including "water damage, meaning accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam". The complaint further alleges that, in June of 2004, Maister learned that certain tenants residing at the insured premises were contemplating suit against it on the grounds that "they had been injured by 'toxic mold' in their apartment units." Maister further alleges that it immediately notified State Farm of the situation.

Suit was eventually instituted in state district court on August 3, 2004 at which time both Maister and State Farm were named as defendants. That litigation was subsequently removed to this Court and litigated to a conclusion by dismissal on June 28, 2005. <u>Giroir, et al. v. Maister Associates, et al.</u>, 04-CV-2555 "I"(2). In

that matter, plaintiffs, indeed, alleged that they were damaged because of toxic mold in their apartments.

State Farm retained the law firm of Stone, Pigman, Walther and Wittmann, hereinafter referred to as Stone, Pigman, to represent its interests in the aforementioned litigation. By letter dated September 10, 2004, State Farm advised Maister of its consent and approval of the retention of the law firm of Middleberg, Riddle and Gianna, hereinafter Middleberg, at Maister's request to represent Maister's interest in the same litigation. As of October, 2004, Maister advised Middleberg that declining occupancy at the property, due to the allegedly toxic mold, was impacting Maister's ability to meet its operating expenses, mortgage, insurance and tax obligations. Maister advised Middleberg that it needed to repair the units in question to stem its economic losses.

The petition then goes on to allege that, once this issue was discussed with State Farm, Maister was advised that any actions undertaken to repair or remediate the vacant apartments would "be deemed by State Farm to be a failure to cooperate ... in the defense of the <u>Giroir</u> litigation and a breach of the insured's obligations under the terms of the policy and would result in State Farm's refusal to defend the <u>Giroir</u> case or satisfy any claims asserted therein." As a result thereof, Maister alleges that it continued to suffer income loss because it could not repair its property, per directions from State Farm, and that further damage

3

accrued to the premises because of new breakages, cracks and leaks.

On April 12, 2005, Maister alleges that it made written demand upon State Farm for coverage of the water and mold damage to the property resulting from covered occurrences during the effective dates of the policy and for the loss of income resulting from Maister's inability to repair and re-rent the units. In June, 2005, State Farm sought additional information pertaining to that claim which Maister alleges was provided. Maister also made demand under Coverage C of its policy for "actual loss of business income", alleging that its loss of income was the direct result of "cooperating with State Farm in connection with the defense of the Giroir lawsuit".

It is uncontroverted that State Farm agreed, under a reservation of rights, to provide plaintiff with a defense in the Giroir litigation pursuant to the provisions of its business policy insuring against third-party liability. State Farm reimbursed Maister's defense costs related to this litigation, including the fee of the Middleberg firm. On June 28, 2005, the Giroir plaintiffs voluntarily dismissed their case with prejudice.

In its complaint, Maister asserts that State Farm is liable to it for all instances of loss, including the costs of repairs to its property resulting from the breaking or cracking of water containing systems and appliances, loss of business income resulting from accidental direct physical losses to the property

4

and for "all other damages resulting from Maister's compliance with State Farm's requirements of cooperation in defense of the Giroir lawsuit", attorneys' fee, costs and penalties as provided for by LSA-R.S. §§22:1220 and 22:658.

In its motion for summary judgment (Rec. doc. 33), State Farm argues that the policy covering plaintiff's property insures for damage caused by an "accidental direct physical loss" which plaintiff has not and cannot identify. According to defendant, any damage to the insured premises was caused by plaintiff's failure to perform ordinary maintenance and repair. In addition, litigation such as was pursued in the Giroir matter is not an accidental direct physical loss as contemplated by the policy and does not trigger the obligation to pay benefits. It is State Farm's position that all damage and/or loss which plaintiff might have sustained was as a result of perils excluded from coverage.

Federal Rule of Civil Procedure 56(c) requires that a district court grant summary judgment when the motion demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Summary judgment is favored in federal courts. Little v. Liquid Air Corp., 37 F.3d 1069, 1075-76 (5th Cir. 1994).

Under Rule 56, once the moving party carries its initial burden of demonstrating an absence of genuine issues of material

fact, the burden shifts to the non-moving party to show that summary judgment should not be granted. <u>Celotex</u>, 477 U.S. at 324. The non-moving party must set forth specific facts demonstrating that there is a genuine issue of material fact. <u>Lujan v. Nat'l Wildlife Federation</u>, 497 U.S. 871, 884-85 (1990). It cannot satisfy its burden "by 'conclusory allegations,' by 'unsubstantiated assertions', or by a only a 'scintilla of evidence'". <u>Little</u>, 37 F.3d at 1075 (internal citations omitted). Rather, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." <u>Id</u>. (citing <u>Celotex</u>, 477 U.S. at 325). Moreover, a party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). There must be "significant probative evidence" on which a jury could reasonably find for the non-movant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). Only admissible evidence - not argument in a brief or allegations of a complaint - can satisfy the non-movant's burden of proof. <u>Solo Serve Corp. v. Westowne Associates</u>, 929 F.2d 160, 164 (5th Cir. 1991).

In determining whether a genuine issue exists for trial, a court "must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment." <u>Hightower v. Tex. Hosp. Ass'n</u>, 65 F.3d 443, 447

(5th Cir. 1995). However, a court may not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Little, 37 F.3d at 1075 (citing Lujan, 497 U.S. at 888). "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998)(quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915-16 & n.17 (5th Cir.), cert. denied, 506 U.S. 832 (1992)). "Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment." Jones v. Potter, 2007 WL 2071613 at *6 (E.D. La. July 16, 2007).

State Farm insured Maison Terrebonne Apartments, owned by Maister, from December 19, 2001 through December 19, 2004 under policy number 98-CX-5416-5. (State Farm Ex. 2). In its "Coverage A" section, the policy insures against accidental direct physical loss to the insured premises when caused by an insured loss as follows:

> When a limit of insurance is shown in the Declarations for Coverage A, we will pay for accidental direct physical loss to buildings at the premises described in the Declarations caused by an insured loss.

Id., policy, p. 2.

The "Losses Insured" section of the policy further states:

> We insure for accidental direct physical loss to property covered under this policy unless the loss is:

> 1. limited in the PROPERTY SUBJECT TO LIMITATIONS section; or
>
> 2. excluded in the LOSSES NOT INSURED section that follows.
>
> Id., policy, p. 6.

Thus, to be entitled to recover insurance proceeds for damage to the premises, there must be an accidental event that results in a direct physical loss that is not otherwise excluded by the policy. Additionally, the policy deductible, in this case $10,000 per occurrence, must also be satisfied before the obligation to pay is activated under Coverage A. (Rec. doc. 33, Ex. 2).

Moreover, the "Losses Not Insured" section of the policy excludes certain accidental direct physical losses from coverage, providing in pertinent part:

> 2. We do not insure for loss either consisting of, or directly and immediately caused by, one or more of the following: ...
>
> d. smog, wear, tear, rust, corrosion, fungus, mold, decay, deterioration, hidden or latent defect of any quality in property that causes it to damage or destroy itself. But if accidental direct physical loss by any of the "Specified Causes of Loss"[1]/ or by building glass breakage results, we will pay for that resulting loss; ...
>
> k. continuous or repeated seepage or leaking of water that occurs over a period of time.

Accordingly, State Farm concedes that, under the policy,

---

[1]/ "Specified Causes of Loss" include "water damage, meaning accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam." Id., policy, p. 1.

physical damage that occurs when a pipe suddenly bursts could be a covered loss. In contrast, it contends that physical damage that results from a slow leak over an extended period of time is not covered.

Nevertheless, State Farm argues that in order for Maister to recover for physical damages sustained to the insured premises under Coverage A, Maister must show that its premises suffered "accidental direct physical loss" between December 19, 2001 and December 19, 2004, which was not otherwise limited or excluded from the policy, and that the damage exceeded the $10,000 policy deductible per occurrence. On this argument, the Court concurs with State Farm and is of the opinion that Maister cannot withstand summary judgment on this issue.

Per minute entry dated September 12, 2007, the Court ordered Maister to supplement its opposition to State Farm's motion for summary judgment in two particulars. (Rec. doc. 39). Maister was ordered to identify with particularity what "covered events" occurred in its multiple apartment buildings for which it claims damages under the policy and when those occurrences took place. (Id.). Maister was also to supplement its position regarding the applicability of the policy deductible. (Id.).

Maister complied with the Court's order by filing a supplemental memorandum in opposition to the summary judgment on October 12, 2007. (Rec. doc. 46). In that pleading Maister

9

conceded that, except for the building containing apartments one through twenty which were affected by the collapsed sewer line, it was "unable to demonstrate from its records that ... physical damage to the [other] apartments" occurred from a covered event under the policy. Maister advised that its maintenance records were not sufficiently detailed to specify whether a leak had occurred from a burst pipe or as a result of slow deterioration. However, with respect to the collapse of the sewer line servicing the building containing apartments one through twenty, Maister advised that one of the plumber's bills indicated an opinion as to the source of a problem in July, 2004, i.e., "a break in the line", which Maister argues is clearly a "covered event". (Rec. doc. 46, Ex. 3).

State Farm correctly argues that, as to the buildings other than the one containing units one through twenty, there is no evidence whatsoever that a covered event occurred which activates the terms of its policy. As to the building with units one through twenty, State Farm again correctly argues that its policy deductible has not been met in order to activate Coverage A of the policy. The only evidence pertaining to repair of the premises which plaintiff has furnished is a receipt for $125.00 from a plumber dated July 8, 2004 and another plumbing bill which was the subject of litigation in the amount of $5,590.80. (Rec. docs. 46-3, 37-12). As to the latter sum, there is no break down as to

location where service was rendered.

Accordingly, all of plaintiff's claims enunciated herein under Coverage A of the policy will be dismissed with prejudice.

In addition to seeking compensation for physical losses, Maister also asserts a claim for insurance benefits for loss of business income under Coverage C of the policy. There does not appear to be a deductible in connection with these payments, if otherwise owed. (State Farm policy, p. 17).

Coverage C of the policy reads, in pertinent part, as follows:

> If Loss of Income coverage is shown in the Declarations, we will pay:
>
> a. for the actual loss of "business income" you sustained due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by accidental direct physical loss to property at the described premises, including personal property in the open (or in a vehicle) within 100 feet, caused by an insured loss; ...

"Business income" is defined as

> net income (net profit or loss before income taxes) that would have been earned or incurred and continuing normal operating expenses, including payroll, incurred during the "period of restoration"; ...

"Period of restoration" is defined as

> the period of time that:
>
> a. begins with the date of accidental direct physical loss caused by an insured loss at the described premises; and
>
> b. ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.

It is based upon the statement of the plumber noted hereinabove that Maister contends that an accidental direct physical loss occurred. However, the Court finds this insufficient for Maister to withstand summary judgment. The document supplied to the Court is merely a bill generated by Joe Blum, Jr. Plumbing Service, Inc. The bill was sent to Maison Terrebonne but does not reflect that the work performed was carried out at that location.[2]/ It merely indicates that the work was to be billed to that location, which may or may not indicate that it was likewise performed there. The plumber, himself, has not signed an affidavit attesting to what he did or observed. There is merely a notation that the plumber apparently "ran a jetter through the main line in apt. 10 and 6, found that there is a break in the line." Whether this is a sewer or water line is not identified and certainly what would be needed to fix it is not suggested. Nor does the document indicate an opinion as to the cause for the break, i.e., deterioration or a sudden event.

When questioned in his deposition as to the alleged accidental direct physical loss to the apartments, Mr. Becker testified as follows, in pertinent part:

---

[2]/ Mr. Becker, the principal of Maister, testified in his deposition that he held an ownership interest in another property in Luling, La. at all relevant times, i.e., Lakewood. There is nothing to establish, since Mr. Blum was neither deposed nor furnished an affidavit, that work was not performed there as opposed to Maison Terrebonne. (Rec. doc. 33-5, p. 32, et seq.)

>...I went through all of the apartments to inspect the mold with Michael Waguespack, our attorney, to evaluate the situation. So he was able to locate minor amounts - somewhat larger than minor amounts of mold in all but a dozen apartments there. And they had various causes, some of which were pipe breakages. Some of which were sewerage overflows. Some of which were condensate. Things in the bathroom. The general conditions. Some of which were roof-related. Washing machines that were in the apartments, et cetera, et cetera. The whole assortment of different things, some of which would come under the language in the policy.
>
> (Rec. doc 33-5, p. 56, <u>et</u> <u>seq</u>.).

And further, Mr. Becker testified as follows:

> Q. But if I look at Mr. Gallagher's report, and I see the different incidents where he found mold as a result of his inspection because of the Giroir lawsuit, can you tell me if any of those incidents, incidents of damage that Mr. Gallagher discovered, were ever reported to State Farm under your State Farm property damage policy before?
>
> A. They were not. I think the answer is none of them were reported.
>
> Q. Do you know why?
>
> A. Because at the time it was ordinary maintenance and repair, and the mold and its effect from the lawsuit were not contemplated at the time. It would have come under the amount of deductible, and it would be pointless to require State Farm to inspect something that was, you know, $100 repair.
>
> (Rec. doc. 33-5, p. 62, <u>et</u> <u>seq</u>.).

The Court notes that, as with Coverage A, the policy in question does not provide Coverage C benefits when the loss in question was caused by one or more of the following:

> d. smog, wear, tear, rust, corrosion, fungus, mold, decay, deterioration ...

13

> k. continuous or repeated seepage or leakage of water that occurs over a period of time ...

Clearly, the deposition of Mr. Becker indicates that the major issue herein was mold, a non-policy covered occurrence.

Additionally, State Farm correctly urges that Maister has presented no credible evidence to establish that any tenant was forced to move out of his/her unit at Maison Terrebonne so that repairs could be made to a broken pipe. Neither has plaintiff presented any accounting documents or affidavits quantifying the amount of income loss; no expert reports appear to have been generated in connection with this issue, although the deadline for doing so had expired before the motion was taken under submission. Tax returns which Maister has furnished do not establish loss of income correlated with the alleged broken pipe.

Accordingly, the Court is of the opinion that summary judgment should be granted in favor of defendant in connection with Maister's claims for payment under Coverage C of the policy as an accidental event has not been sufficiently documented. At this stage of the litigation, it is insufficient to indicate that something which might qualify as an accidental event occurred at some unspecified past time. Additionally, the apartments impacted by the alleged accidental event have not been identified with properly documented affidavits or deposition testimony

Lastly, and perhaps the gravamen of this litigation concerns the applicability of Section L of the policy to the facts herein

and whether State Farm can be responsible to plaintiff for lost rentals incurred when plaintiff was allegedly prevented from repairing the property during the course of the Giroir litigation.

Coverage L of the Comprehensive Business Liability section of the policy provides, in pertinent part, as follows:

> SUPPLEMENTARY PAYMENTS
>
> In addition to the Limit of Insurance, we will pay, with respect to any claims or suit we defend:
>
> 1.  any expenses we incur;
>
> 2.  up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Coverage L - Business Liability for **bodily injury** applies. We do not have to furnish these bonds;
>
> 3.  the cost of bonds to release attachments but only for the amount within our Limit of Insurance. We do not have to furnish these bonds;
>
> 4.  all reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or **suit**, including actual loss of earnings, up to $100 a day because of time off from work;
>
> 5.  all costs taxed against the insured in the suit.
>
> 6.  prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer;
>
> 7.  all interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

Plaintiff's claim comes specifically under item "4" listed above and there appears to be a lack of jurisprudence interpreting said

15

section.

Plaintiff contends that its loss of income attendant to the inability to rent the premises in question because it was instructed not to repair the property during the pendency of the <u>Giroir</u> litigation is an expense compensable under this section. For its part, State Farm argues that loss of rental income is not compensable under this section and, furthermore, even if it were, the amount is capped at $100 per day.

The Court will assume, without deciding, that plaintiff can make a claim for loss of rentals under item "4" above. However, in this instance plaintiff cannot establish that State Farm has taken any action which would trigger a policy provision in order to result in its liability to plaintiff for the following reasons:

Plaintiff contends that 1) upon instruction from Middleberg, which was ratified by State Farm, it was prohibited from effecting repairs to its apartments that were necessary to enable it to re-rent the apartments; 2) its inability to effect repairs sufficient to enable it to re-rent the apartments resulted in a loss of earnings and the eventual failure of the business; 3) obedience to the instruction of Middleberg was compelled by the terms of the insurance policy on the property and by specific instruction from State Farm that it "comply with any request that [Middleberg] may make"; 4) it was told that disobedience of the instruction would result in loss of liability insurance coverage; and 5) its

16

appreciation of the instructions and the consequences of disobedience was reasonable. (Rec. doc. 65, p. 1-2).

When the Giroir litigation was filed, plaintiffs' counsel moved for a protective order restraining Maister from demolishing the buildings or "removing any carpeting, ceiling tiles, sheetrock, etc." A rule to show cause was noticed in state district court to deal with that issue. But before that hearing could occur, the matter was removed to this court. An order as sought in the rule to show was never issued. But Maister was advised by Middleberg not to make any such repairs without court approval for fear of being accused of spoliation of evidence.

It is further clear from the record that it was plaintiff, through its principal, Brian Becker, who chose Middleberg as its counsel herein. (Rec. doc. 33-5, pp. 72-74). State Farm agreed to allow and pay for Middleberg's representation of plaintiff. Stone, Pigman represented the interest of State Farm. Per letter dated September 10, 2004, State Farm advised plaintiff that it would pay for Middleberg's fees, that it would not interfere with Maister's attorney-client relationship with Middleberg, that Maister faced potential exposure in the Giroir litigation for damages not covered by the policy, that Maister might want to retain additional counsel to represent it for issues involving excess and/or coverage and that State Farm would not pay legal fees for advice rendered to Maister concerning coverage. (Rec. doc. 65-10).

It is apparently Maister's contention that there was an "identity of interest" between Maister and State Farm such that advice by Middleberg concerning repair of the premises is also the advice of State Farm. Other than Maister's conclusory argument to this effect, there is nothing in the record to lead the Court to the same conclusion. In fact, the record reflects that, from the inception of the Giroir litigation, there was potential conflict between State Farm and Maister in that State Farm did not intend to honor a first-party claim by Maister concerning property damage to the premises or loss of rents due to its belief that any problems were caused by plaintiff's failure to maintain its property. Additionally, plaintiff was being sued in Giroir for items of damage for which State Farm was not responsible under its policy, i.e., punitive damages.

The record further reflects that Middleberg proposed a "plan of action", via letter of October 21, 2004, whereby the Court should authorize specific work to be performed to the property that involved mold or water damage in order to avert a claim of spoliation of evidence. However, Middleberg believed that Maister could and should repair water leaks, remove excess water and perform other maintenance not concerned with mold. (Rec. doc. 65-12). State Farm points out that there is nothing in the record to establish that plaintiff followed Middleberg's recommendation by making the repairs that counsel suggested were appropriate without

18

court order. (Rec. doc. 33-20, Affidavit of Fabian Patin, excerpt from General Report for All Buildings, Ch. 12 "Conclusions").

But plaintiff's argument herein fails if there is no "identity of interest" between it and State Farm such that the advice of Middleberg becomes the advice of State Farm as well. There is nothing unusual about State Farm being represented by one counsel and Maister by another. This very fact belies commonality of interest and implies a conflict. As such, no "identity of interest" between the parties is apparent. The argument also fails absent proof that the advice given by Middleberg was faulty. On this issue as well, there is nothing in the record to establish that, in giving plaintiff the advice which was rendered, Middleberg breached the reasonable standard of care in the legal community to establish that State Farm's interest was placed above Maister's. Such proof would require expert testimony which is also lacking herein.

Accordingly, the motion for summary judgment filed herein by State Farm is GRANTED and the motion for summary judgment filed herein by plaintiff is DENIED.

There will be judgment herein dismissing the claims of plaintiff, Maister Associates, against State Farm Fire & Casualty Insurance Company and State Farm General Insurance Company, with prejudice, at plaintiff's costs.

New Orleans, Louisiana, this __31__ day of _____March_____,

200_9_.

                                                        */s/ Alma L. Chasez*
                                                          ALMA L. CHASEZ
                                   UNITED STATES MAGISTRATE JUDGE